# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

AUSTIN SMITH, et al.,

      Plaintiffs,

                                  Civil Action 2:18-cv-243
  v.                                Magistrate Judge Jolson

DOLLAR TREE STORES
INC., et al.,

      Defendant, Third-Party Plaintiff

  v.

CYNTHIA MASON

      Third-Party Defendant

## OPINION AND ORDER

This matter is before the Court on Defendant Dollar Tree Stores, Inc.'s Motion to Exclude Opinions of Plaintiffs' Expert (Doc. 82). That Motion is **GRANTED**.

## I.    BACKGROUND

This case concerns an incident at one of Defendant Dollar Tree Stores, Inc.'s ("Dollar Tree") store in Columbus, Ohio. Plaintiffs are Austin Smith and his father, Bryan Smith. Third-Party Defendant Cynthia Mason is the mother of Plaintiff Bryan Smith and the grandmother of Plaintiff Austin Smith. (Doc. 64-1, 16:22–17:4; *id.*, 26:6–8). On July 24, 2000, Austin traveled with Ms. Mason and her then-husband from Rushville, Indiana to Columbus, Ohio to attend a scrimmage between the Cleveland Browns and Indianapolis Colts. (*Id.*, 22:3–13).

After the game, the three of them stopped at a Dollar Tree store in the Columbus area (the "Hilliard Dollar Tree"). (*Id.*, 22:13–16). Upon entering the Hilliard Dollar Tree, Ms. Mason

placed Austin in a cart and "told him that if he was a good boy," she "would get him some toys[.]" (*Id.*, 22:17–20). She explained what happened next:

> So we proceeded down the aisle to where the toys were. We were probably about three-fourths of the way down the aisle and he saw the toys and he wanted to get out. So I stopped the cart. I took him out of the cart. And as I was putting him down on the floor, I took ahold of his wrist. He broke free from me and took about three steps. And at the time, he then fell forward.
> By this time, he was at the end of the aisle and there were three display hooks sticking out from the wall. There was no product hanging on them. They were probably about 10 inches from the floor. And he was just probably an arm's length from me before I could grab him. I was not able to grab him as he fell. And when he fell, it looked like he was going to fall in between the two display hooks, but instead he fell on the display hook …
> When he flipped his head back, it popped the display hook off and he -- and by that time I picked him up and he was bleeding profusely from his eye.

(*Id.*, 22:22–23:19). Someone at the store called 911, and Austin was transported by ambulance to Children's Hospital in Columbus where he was admitted. (*Id.*, 24:1–8).

Austin was diagnosed with a fractured orbit, (*id.*, 37:14–17), and then transferred to Riley Children's Hospital in Indianapolis for surgery, (*id.*, 40:1–9). Doctors performed surgery to determine the extent of injury and its effect on the musculature of Austin's eye. (*Id.*, 41:16–42:14). They also repaired the fractured orbit to prevent spinal fluid leakage. (*Id.*).

Plaintiffs filed this action in the Franklin County Court of Common Pleas on February 22, 2018. (Doc. 1-1). After Defendants removed to this Court on March 23, 2018, (Doc. 1), Plaintiffs filed a First Amended Complaint, alleging, among other things, claims of negligence against Defendant Dollar Tree and Defendant Trion Industries, Inc., (Doc. 8). The parties filed several Motions for Summary Judgment (Doc. 57, 59, 61), and Defendant Dollar Tree also filed a Motion to Exclude Opinions of Plaintiffs' Expert (Doc. 82). Subsequent to filing its Motion for Summary Judgment, Defendant Trion Industries, Inc. settled with Plaintiffs and was dropped from this action. (Doc. 86). The remaining Motions for Summary Judgment (Docs. 59, 61) and Defendant

Dollar Tree's Motion to Exclude Opinions of Plaintiffs' Expert (Doc. 82) remain pending and are now fully briefed.

## II. MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT (Doc. 82)

Defendant Dollar Tree argues that the opinions of Plaintiff's expert, Catherin Peterman, are inadmissible under Federal Rules of Evidence 702 and 703. (Docs. 82, 87). According to it, Ms. Peterman's opinions are not reliable and are not based on specialized knowledge that would assist the trier of fact. (Doc. 82 at 7–13).

### A. Standard of Review

"District courts are the 'gatekeep[ers]' of expert testimony." *United States v. Mallory*, 902 F.3d 584, 592 (6th Cir. 2018) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. It "grants district courts 'discretion in determining whether … a proposed expert's testimony is admissible, based on whether it is both relevant and reliable.'" *Wilden v. Laury Transp., LLC*, 901 F.3d 644, 649 (6th Cir. 2018) (quoting *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007)).

The purpose of this analysis "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). To effectuate this purpose, courts must focus "on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "At base, a judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Biehl v. B.E.T., Ltd.*, No. 2:15-CV-2879, 2018 WL 684646, at *2 (S.D. Ohio Feb. 2, 2018), *aff'd*, No. 18-3201, 2018 WL 7502930 (6th Cir. Oct. 17, 2018) (citation and internal quotations omitted).

"[T]he proponent of expert testimony … bears the burden of proving its admissibility." *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 752 (6th Cir. 2014) (citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001)).

**B.  Discussion**

*1.  Factual basis*

Rule 702 requires that an expert's testimony be "based on sufficient facts or data." Fed. R. Evid. 702. Ms. Peterman's proposed testimony does not satisfy that standard.

"To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122–23 (Ohio 2009) (citing *Robinson v. Bates*, 857 N.E.2d 1195, 1201 (Ohio 2006)). "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by

the relationship between the landowner and the plaintiff." *Lang*, 909 N.E.2d at 123 (citing *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996)).

Here, the parties agree Austin and Ms. Mason were business invitees. (*See* Doc. 61 at 5 ("For purposes of this Motion, Defendants concede that Austin was a business invitee at the Dollar Tree store.")). "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1089–90 (Ohio 2003) (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474 (Ohio 1985)). When evaluating whether a store breached its duty to maintain premises in a reasonably safe condition, context matters. *Compare Gould ex rel. Gould v. TJX Companies, Inc.*, No. 11-288 (NLH) (KMW), 2013 WL 1288167, at *2–*4 (D.N.J. Mar. 26, 2013) (denying summary judgment on negligence claim where a nine year-old's eyelid was pierced by a ten-inch display hook protruding from a slatted wall and "obscured by clothing hanging from a hook above") *with Schwartz v. Dolgencorp*, LLC, No. CIV.A. 11-00720-BAJ, 2012 WL 5463927, at *1–*2 (M.D. La. Nov. 7, 2012) (granting defendant's motion for summary judgment on negligence claim where plaintiff injured her eye on a display rack and concluding that the display rack was not an "unreasonably dangerous condition" because the plaintiff testified that she could "clearly see the rack/levels prongs holding the slippers").

Plaintiffs seek to introduce Ms. Peterman's expert report and testimony to demonstrate that Defendant Dollar Tree failed to maintain its store in a reasonably safe condition. They maintain that, in formulating her opinion, Ms. Peterman properly relied on Ms. Mason's deposition testimony, the photographs taken by Ms. Mason of the store the day after the incident, and Ms.

5

Peterman's site visit. (Doc. 85 at 2–5). But a review of those sources of information illustrates that they are insufficient under Rule 702(b).

The Court starts with the photographs of the Hilliard Dollar Tree taken by Ms. Mason the day after the incident. Plaintiff repeatedly emphasizes that the photographs depict the type of hook that injured Austin. (*See, e.g.*, *id.* at 3). But Ms. Mason's deposition testimony illustrates the limits of Ms. Peterman relying on these photographs as a factual basis for her expert opinion. Ms. Mason testified that, although the walls and display hooks in the photographs were "familiar," their layout was not the same as the day Austin was injured. (Doc. 64-1, 38:9–23). She noted that, at the time Austin was injured, there were no products on the bottom row of the display, and she could not tell from the photographs whether the display hooks were in a similar position to the time when Austin was injured. (*Id.*, 38:24–39:6). Further, Ms. Mason had "no idea" whether any of the display hooks in the photographs were the display hook that caused Austin's injury. (*Id.*, 59:7–10).

What accounts for the inconsistencies between the photographs and the actual store display that injured Austin? A rather significant fact: The photographs presented at Ms. Mason's deposition were not of the scene of Austin's injury. (*Id.*, 44:3–45:9; *id.*, 47:5–9; *id.*, 50:9–24). The photographs, therefore, offer little, if any, factual basis for a reliable expert opinion regarding whether the Hilliard Dollar Tree was in a reasonably safe condition at the time of Austin's injury.

Ms. Mason's deposition testimony is similarly insufficient. She testified that Austin fell near three uncovered display hooks that were 10 inches long and approximately 10 inches from the floor. (*Id.*, 23:6–14). According to her, the display hooks had square ends and were about the diameter of a pencil. (*Id.*, 32:22–33:3). And while she was able to offer general descriptions of the display hook that caused Austin's injury, her description of the surrounding area was vague:

6

> There was like things stacked to the left of us. It was like not on shelves, but kind of like items stacked to the left of us. There were displays to the right of us. He was in the cart. And then probably maybe 4 feet, there was a wall. And there they had display hooks of toys and things on the wall at the time.

(*Id.*, 30:3–9). Further, she could not specifically recall what the display wall looked like. (*Id.*, 65:6–12). Because context is key in determining whether the Hilliard Dollar Tree was maintained in a reasonably safe condition, Ms. Mason's deposition testimony also offers little factual support upon which an expert could offer a reliable opinion.

Although Ms. Peterman did not cite it in her report, (*see* Doc. 80-1 at 8), Plaintiffs argue that her on-site inspection of the Hilliard Dollar Tree also provided a sufficient factual basis for her expert opinion, (Doc. 85 at 2–3). She testified that she visited the Hilliard Dollar Tree on January 21, 2019, at which time she took approximately four pictures of a wall display of gift bags and a holiday display of Valentine decorations. (Doc. 66-1, 19:3–20:13). Ms. Peterman chose those areas because the display hooks were similar to those described by Ms. Mason in her deposition testimony and in the photographs Ms. Mason took the day after Austin was injured. (*Id.*, 20:14–20). But, given the passage of 18 years, the layout of the store was not the same as at the time of Austin's injury. (*Id.*, 21:4–10). And Ms. Peterman did not take any measurements of the Dollar Tree store when she visited. (*Id.*, 21:14–16). Notably, Ms. Peterman visited the Hilliard Dollar Tree in January 2019, months after completing her expert report in November 2018. (Doc. 80-1, ¶ 3). It is, therefore, unclear to the Court how Ms. Peterman's post-report, in-person inspection of the Dollar Tree store 18 years after Austin's injury could provide a sufficient factual basis for a reliable expert opinion.

In summary, in forming her expert opinion, Ms. Peterman relied on (1) photographs of an area of the store where Austin was not injured, (2) Ms. Mason's vague testimony regarding the conditions of the store in the specific area where Austin was injured, and (3) an in-person

inspection of the store 18 years after the injury occurred and months after she completed her expert report. Given the weakness of this factual foundation, any opinion as to whether Defendant Dollar Tree breached its obligation to maintain the Hilliard Dollar Tree in reasonably safe conditions is inherently speculative. And "[b]ecause the knowledge requirement of Rule 702 requires more than subjective belief or unsupported speculation," Ms. Peterman's "testimony should [be] excluded." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (internal citation and quotations omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)) (holding that "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" and exclude the opinion accordingly).

### 2. *Reliable principles and methods*

Similarly problematic is the issue of whether Ms. Peterman's testimony is the product of reliable principles and methods. Defendant Dollar Tree emphasizes that, "in order to satisfy the 'reliability' requirement, the expert must have employed a valid and accepted methodology in forming her opinions." (Doc. 82 at 8). In its view, Ms. Peterman relied solely on her own experience, rather than any reliable principles or methods, to support her testimony. (*Id.* at 7–9). Plaintiff does not address this argument in its Response. (*See generally* Doc. 85).

Courts consider a number of factors in determining if proposed expert testimony is reliable, including "whether an expert's theory has been tested, is the subject of peer review and publication, has a permissible error rate, follows established standards, and receives 'general acceptance' within a 'relevant scientific community.'" *Mallory*, 902 F.3d at 592–93 (quoting *Daubert*, 509 U.S. at 593–94). "These so-called Daubert factors, while perhaps most apt in evaluating a purely scientific discipline, can also apply in evaluating non-scientific fields that are 'technical' or

8

'specialized' in nature." *Mallory*, 902 F.3d at 593 (quoting *Kumho Tire*, 526 U.S. at 149–53). "But the factors are not mandatory in every case." *Mallory*, 902 F.3d at 593 (quoting *Kumho Tire*, 526 U.S. at 150–51). "The questions of what factors to apply and what conclusion to draw about an expert's reliability are entrusted to the district court's discretion." *Mallory*, 902 F.3d at 593 (quoting *Kumho Tire*, 526 U.S. at 152–53).

Some of these factors are relevant to determining the reliability of Ms. Peterman's opinion in this case. Here, Ms. Peterman opined that Defendant "Dollar Tree's use of this type of display hook was opposite to the accepted practices for safe retail design and was unreasonably dangerous to children in their store." (Doc. 80-1 at 9–11). In formulating that opinion, the Court would have expected Ms. Peterman to do so consistent with established standards that are generally accepted within her field of expertise. *See Mallory*, 902 F.3d at 592–93. For example, to support her opinion, she could have conducted interviews; taken relevant measurements; researched, inspected, and tested the display hook at issue; or reconstructed the display wall at issue and recreated the accident. But Ms. Peterman did none of that here. *See Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *5 (D. Md. May 16, 2017) (finding a retail safety expert's testimony to be unreliable because he "reviewed no evidence of the condition of the shelves prior to the accident"; "never visited the Home Depot store where the accident occurred"; "conducted no interviews"; "took no measurements of anything related to the accident"; "did no research about any of the ClosetMaid products at issue"; "did not inspect any of the products involved in the accident"; "performed no tests"; and "did not reconstruct the display shelf or recreate the accident.").

Instead, Ms. Peterman reviewed a number of publications related to child safety that, in her opinion, indicate that the use of display hooks like the one that injured Austin is generally

9

dangerous to children. (Doc. 80-1 at 9–11). But the Court has "found no indication in the record that other experts in the industry use" Ms. Peterman's principles and methods to support similar opinions. *Kumho Tire*, 526 U.S. at 157. Nor do Plaintiffs "refer to any articles or papers that validate" Ms. Peterman's approach in similar circumstances. *Id.* As a result, her "report reads more like a research paper than an expert report because [s]he cites to secondary sources and then improperly reaches legal conclusions about this case." *Pickens v. Wal-Mart Stores E.*, LP, No. 3:14-CV-318-CAN, 2015 WL 4997064, at *4 (N.D. Ind. Aug. 20, 2015).

Based on its review of the record, the Court is left to question whether Ms. Peterman's approach was designed to reach a specific conclusion for purposes of this litigation. Because that conclusion is inconsistent with Rule 702(c)'s and *Daubert*'s requirement that expert testimony be based on reliable principles and methods, the Court will exclude her testimony accordingly.

## III. DEFENDANT DOLLAR TREE'S MOTION FOR SUMMARY JUDGMENT (Doc. 61)

In light of the Court's ruling on Plaintiffs' Motion to Exclude Opinion of Plaintiffs' Expert, Catherine Peterman (Doc. 82), additional briefing would be useful to assist the Court in resolving Defendant Dollar Tree's Motion for Summary Judgment. Specifically, the parties are ordered to address the following two issues: (1) whether Plaintiff is required to present expert testimony in support of its negligence claim to survive summary judgment, and (2) assuming no expert testimony is required, whether there is sufficient evidence remaining in the record to establish that the Hilliard Dollar Tree was not maintained in a reasonably safe condition at the time of Austin's injury. Plaintiffs shall file a brief addressing these issues on or before September 27, 2019. Defendant Dollar Tree shall file a response within ten days of Plaintiffs' brief being filed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Exclude Opinion of Plaintiffs' Expert, Catherine Peterman (Doc. 82) is **GRANTED**. The parties shall submit supplemental briefing on Defendant Dollar Tree's Motion for Summary Judgment consistent with the Court's directions above.

IT IS SO ORDERED.

Date: September 12, 2019                     /s/ Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE