# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**AUSTIN SMITH, et al.,**

    **Plaintiffs,**

                                              **Civil Action 2:18-cv-243**
    v.                                          **Magistrate Judge Jolson**

**DOLLAR TREE STORES**
**INC., et al.,**

    **Defendant, Third-Party Plaintiff**
    v.

**CYNTHIA MASON**

    **Third-Party Defendant**

## OPINION AND ORDER

This matter is before the Court on Defendant Dollar Tree Stores, Inc.'s Motion for Summary Judgment (Doc. 61) and Third-Party Defendant Cynthia Mason's Motion for Summary Judgment (Doc. 59). The Motions are **DENIED**.

## I. BACKGROUND

The Court has previously summarized the relevant factual background:

> This case concerns an incident at one of Defendant Dollar Tree Stores, Inc.'s ("Dollar Tree") store in Columbus, Ohio. Plaintiffs are Austin Smith and his father, Bryan Smith. Third-Party Defendant Cynthia Mason is the mother of Plaintiff Bryan Smith and the grandmother of Plaintiff Austin Smith. (Doc. 64-1, 16:22–17:4; *id.*, 26:6–8). On July 24, 2000, Austin traveled with Ms. Mason and her then-husband from Rushville, Indiana to Columbus, Ohio to attend a scrimmage between the Cleveland Browns and Indianapolis Colts. (*Id.*, 22:3–13).
> 
> After the game, the three of them stopped at a Dollar Tree store in the Columbus area (the "Hilliard Dollar Tree"). (*Id.*, 22:13–16). Upon entering the Hilliard Dollar Tree, Ms. Mason placed Austin in a cart and "told him that if he was a good boy," she "would get him some toys[.]" (*Id.*, 22:17–20). She explained what happened next:

> So we proceeded down the aisle to where the toys were. We were probably about three-fourths of the way down the aisle and he saw the toys and he wanted to get out. So I stopped the cart. I took him out of the cart. And as I was putting him down on the floor, I took ahold of his wrist. He broke free from me and took about three steps. And at the time, he then fell forward.
>
> By this time, he was at the end of the aisle and there were three display hooks sticking out from the wall. There was no product hanging on them. They were probably about 10 inches from the floor. And he was just probably an arm's length from me before I could grab him. I was not able to grab him as he fell. And when he fell, it looked like he was going to fall in between the two display hooks, but instead he fell on the display hook …
>
> When he flipped his head back, it popped the display hook off and he -- and by that time I picked him up and he was bleeding profusely from his eye.

(*Id.*, 22:22–23:19). Someone at the store called 911, and Austin was transported by ambulance to Children's Hospital in Columbus where he was admitted. (*Id.*, 24:1–8).

Austin was diagnosed with a fractured orbit, (*id.*, 37:14–17), and then transferred to Riley Children's Hospital in Indianapolis for surgery, (*id.*, 40:1–9). Doctors performed surgery to determine the extent of injury and its effect on the musculature of Austin's eye. (*Id.*, 41:16–42:14). They also repaired the fractured orbit to prevent spinal fluid leakage. (*Id.*).

(Doc. 88 at 1–2). Austin was two years old at the time of the incident. (Doc. 64-1, 26:17–24).

Nearly two decades later:

> Plaintiffs filed this action in the Franklin County Court of Common Pleas on February 22, 2018. (Doc. 1-1). After Defendants removed to this Court on March 23, 2018, (Doc. 1), Plaintiffs filed a First Amended Complaint, alleging, among other things, claims of negligence against Defendant Dollar Tree and Defendant Trion Industries, Inc., (Doc. 8). The parties filed several Motions for Summary Judgment (Doc. 57, 59, 61), and Defendant Dollar Tree also filed a Motion to Exclude Opinions of Plaintiffs' Expert (Doc. 82). Subsequent to filing its Motion for Summary Judgment, Defendant Trion Industries, Inc. settled with Plaintiffs and was dropped from this action. (Doc. 86).

(Doc. 88 at 2).

The Court granted Defendant Dollar Tree's Motion to Exclude Opinions of Plaintiffs' Expert, concluding that the opinions of Plaintiffs' expert were not sufficiently reliable to be

presented to a jury. (*See generally* Doc. 88). "[T]o assist the Court in resolving Defendant Dollar Tree's Motion for Summary Judgment," the Court directed the parties to submit supplemental briefs addressing two issues: "(1) whether Plaintiff is required to present expert testimony in support of its negligence claim to survive summary judgment, and (2) assuming no expert testimony is required, whether there is sufficient evidence remaining in the record to establish that the Hilliard Dollar Tree was not maintained in a reasonably safe condition at the time of Austin's injury." (*Id.* at 10). The parties have submitted their supplemental briefs,[1] and the pending Motions for Summary Judgment are now ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the

---

[1] The parties agree that Plaintiff is not required to present expert testimony in support of their negligence claim to survive summary judgment. (*See* Doc. 91 at 2 (asserting that Defendant Dollar Tree's prior argument was "an admission by defense counsel that no expert is needed"); Doc. 92 at 1 ("Although expert opinion is not required …")).

3

central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

As noted, two Motions are before the Court. The Court addresses each of them in turn.

### A. Defendant Dollar Tree Stores, Inc.'s Motion for Summary Judgment (Doc. 61)

"To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122–23 (Ohio 2009) (citing *Robinson v. Bates*, 857 N.E.2d 1195, 1201 (Ohio 2006)). "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Lang*, 909 N.E.2d at 123 (citing *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996)).

Here, the parties agree Austin and Third-Party Defendant Mason were business invitees. (*See* Doc. 61 at 5 ("For purposes of this Motion, Defendants concede that Austin was a business invitee at the Dollar Tree store.")). "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1089–90 (Ohio 2003) (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474 (Ohio 1985)). This duty of care is heightened because of Austin's age at the time of the incident. *See Bennett v. Stanley*, 748 N.E.2d 41, 45 (Ohio 2001) (quoting *Di Gildo v. Caponi*, 247 N.E.2d 732, 734 (Ohio 1969)) ("[T]he amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same

4

circumstances … Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter … The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore the greater precaution should be taken, where children are exposed to them.").

A plaintiff can establish that a business owner breached its duty of care by establishing that:

> (1) the defendant, through its officers or employees, was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and neglected to promptly remove it or give adequate notice of its presence; or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to remove it or warn against it was attributable to a lack of ordinary care.

*Sherrod v. Williams*, No. 3:14-CV-454, 2019 WL 342029, at *10 (S.D. Ohio Jan. 28, 2019) (quoting *Simmons v. Quarry Golf Club, LLC*, 60 N.E.3d 454, 460 (Ohio Ct. App. 2016)); *see also Hochstetler v. Menards*, 688 F. App'x 381, 383 (6th Cir. 2017) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476–77 (6th Cir. 2010)) (same). "A business invitee bears the burden to prove that the premises owner breached the standard of care." *Ray v. Wal-Mart Stores, Inc.*, 993 N.E.2d 808, 816 (Ohio Ct. App. 2013) (citing *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 53, 372 N.E.2d 335 (Ohio 1978)). "Whether a premises owner breached the standard of care ordinarily is a factual question left to the jury." *Ray*, 993 N.E.2d at 816 (citation omitted). "But "where there is no genuine issue of fact for the jury to decide, a court may grant summary judgment if the moving party is otherwise entitled to judgment as a matter of law." *Id.* (citation and quotations omitted).

Defendant Dollar Tree's Motion for Summary Judgment turns on the issue of breach. The factual record regarding this issue is mixed. On the one hand, as Defendant Dollar Tree notes,

5

(Doc. 61 at 7–8), Third-Party Defendant Mason testified that the display hook that injured Austin was "similar" to display hooks she had seen in other stores before. (Doc. 64-1 at 33:23–34:3). Relying on this testimony, Defendant Dollar Tree maintains that the display hook in question "was an ordinary device commonly found at retail stores throughout the country" and therefore it owed no duty to warn its customers about it. (Doc. 61 at 6–8).

On the other hand, as Plaintiffs emphasize, (Doc. 80 at 7), Third-Party Defendant Mason testified that the display hook that injured Austin was sharp and unprotected despite the availability of other types of display hooks. (Doc. 64-1, 33:7–16; 61:6–17). She further testified that the display hook in question was approximately ten inches long and that it was positioned ten inches off the ground. (*Id.*, 32:18–33:2). Based on this testimony, Plaintiffs argue that "[p]lacing unguarded display hooks below eye level clearly creates a dangerous condition to customers, especially to young children who are prone to falling," and, therefore, "Dollar Tree clearly did not maintain its premises in a reasonably safe condition for its customers." (Doc. 80 at 7).

Construing these facts in the light most favorable to Plaintiffs, did Defendant Dollar Tree breach its duty to maintain its premises in a reasonably safe condition and to warn its invitees of latent or hidden dangers? That is a good question, and one that a jury, not the Court, must answer. *See Ray*, 993 N.E.2d at 816 (citation omitted) ("Whether a premises owner breached the standard of care ordinarily is a factual question left to the jury."); *Colville v. Meijer Stores Ltd.*, No. 2011–CA–011, 2012 WL 1964959, at *5 (Ohio Ct. App. June 1, 2012) (quoting *Detrick v. Columbia Sussex Corp.*, 90 Ohio App.3d 475, 477, 629 N.E.2d 1081 (2d Dist. 1993)) ("Whether the owner acted with reasonable care under the circumstances is a question of fact for the jury."). A reasonable jury could adopt Defendant Dollar Tree's position and find that the display hanger in question was a common object used in similar stores throughout the country and therefore

reasonably safe consistent with Defendant Dollar Tree's duty to invitees. *See, e.g.*, *Rogers v. Sears, Roebuck And Co.*, No. C-010717, 2002 WL 1393666, *1–3 (Ohio Ct. App. June 28, 2002) (finding that "standard table" in defendant's waiting room did not pose an unreasonable risk of injury as a matter of law and emphasizing that defendant had no duty to "childproof its waiting room"). Or a reasonable jury could find that, given the heightened duty Defendant Dollar Tree owed to Austin, *see Bennett*, 748 N.E.2d at 45, the use of a pointed, unguarded display hanger placed ten inches off the ground despite the availability of alternative and allegedly safer display hangers was unreasonable under the circumstances. *See, e.g.*, *Kemper v. Builder's Square, Inc.*, 671 N.E.2d 1104, 1108 (Ohio Ct. App. 1996) (holding that whether a defendant's failure to use a safety device breached its duty of care to plaintiff was a question for a jury); *Wal-Mart Stores, Inc. v. Lerma*, 749 S.W.2d 572, 576 (Tex. Ct. App. 1988) ("A trier of fact could have found that a clothing rack, though not normally dangerous, presented an unreasonable risk of harm to children when it was adjusted at a height where a mere three-year-old could reach up and swing from it."). Because there are disputed issues of material fact underlying this determination, the Court will deny Defendant Dollar Tree's Motion for Summary Judgment.

Defendant Dollar Tree's arguments to the contrary are unpersuasive. It first argues that it had no duty to warn its customers about ordinary display hangers. But this argument presupposes that the display hanger in question was, in fact, an ordinary display hanger. As noted above, this factual issue is contested. (*See* Doc. 64-1, 33:7–16; 61:6–17 (testimony that the display hook that injured Austin was sharp and unprotected despite the availability of other, allegedly safer types of display hooks)). Defendant Dollar Tree's reliance on *Rogers* is, therefore, misplaced. Moreover, this argument ignores that Plaintiffs' breach argument turns, in part, on the location and placement of the display hanger. (*See* Doc. 80 at 7 (emphasizing that the display hanger was ten inches off

7

the ground "below eye level")). Even assuming that the display hanger in question was "ordinary," that does not compel the conclusion that Defendant Dollar Tree used it in a reasonably safe matter. *See, e.g.*, *Lerma*, 749 S.W.2d at 576 (holding that a jury could find that an ordinary "clothing rack, though not normally dangerous, presented an unreasonable risk of harm to children when it was adjusted at a height where a mere three-year-old could reach up and swing from it").

Similarly unpersuasive is Defendant Dollar Tree's contention that it "had no superior knowledge regarding any dangerous conditioned posed by the display hanger." (Doc. 61 at 8). Under Ohio law, a business owner's duty to protect its customers from harm "is predicated on the notion that a business owner has superior knowledge of dangerous conditions that may cause injury to those on the premises." *Motes v. Cleveland Clinic Found.*, No. 97090, 2012 WL 760634, at *2 (Ohio Ct. App. Mar. 8, 2012) (citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 497, 693 N.E.2d 807 (1st Dist. 1996)); *see also* Baldwin's Ohio Handbook Series, Oh. Personal Injury § 16:1 (2019 ed.) (same). But "'[i]f the plaintiff proves that defendant or its employees created the dangerous condition, the plaintiff does not have to show that defendant had knowledge of the dangerous condition.'" *Myers v. Coshocton Vill. Inn & Suites*, No. 2:14-CV-981, 2016 WL 2853585, at *8 (S.D. Ohio 2016) (quoting *Baudo v. Cleveland Clinic Found.*, 680 N.E.2d 733, 734 (Ohio Ct. App. 1996)). "This is so because 'one who has created the condition is presumed to know what it created.'" *Myers*, 2016 WL 2853585, at *8 (quoting *Crane v. Lakewood Hosp.*, 658 N.E.2d 1088, 1093 (Ohio Ct. App. 1995)).

Here, Defendant Dollar Tree does not dispute that it created the display that contained the display hanger that injured Austin. Indeed, it has failed to identify portions of the record demonstrating the absence of a genuine issue of material fact as to whether it "was responsible for the hazard," *Sherrod*, 2019 WL 342029, at *10 (quoting *Simmons*, 60 N.E.3d at 460). As a result,

8

a jury could find that it breached its duty to Austin. *See Sherrod*, 2019 WL 342029, at *10 (quoting *Simmons*, 60 N.E.3d at 460) (holding that a plaintiff can establish a breach of that duty by establishing that "(1) the defendant, through its officers or employees, was responsible for the hazard …").

## B. Third-Party Defendant Cynthia Mason's Motion for Summary Judgment (Doc. 59)

Third-Party Defendant Mason moves for summary judgment on Defendant Dollar Tree's purported negligent supervision claim. (*See generally* Doc. 59). Under Ohio law, "[a] parent may … be held responsible for failure to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence." *Huston v. Konieczny*, 556 N.E.2d 505, 509 (Ohio 1990) (collecting cases). In order to establish a successful negligent supervision claim, a plaintiff must show that: "(1) the parents knew of their child's particular reckless or negligent tendencies (thus knew they needed to exercise control over him); (2) the parents had the ability to exercise control; and (3) the parents did not exercise that control." *Hau v. Gill*, No. 98CA007061, 1999 WL 492633, at *2 (Ohio Ct. App. July 14, 1999) (collecting cases); *see also Cashman v. Reider's Stop-N-Shop Supermarket*, 504 N.E.2d 487, 489 (Ohio Ct. App. 1986) (quoting 2 Restatement of the Laws 2d, Torts (1965) 123–124, Section 316) ("A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.").

Typically, negligent supervision claims are based on a parent's failure to supervise their child resulting in the child injuring a third party. *See Cashman*, 504 N.E.2d at 489 ("A parent is

9

under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming *others*" (emphasis added)); *see also Ross v. Wendel*, 97 N.E.3d 722, 726–27 (Ohio Ct. App. 2017) (analyzing negligent supervision claim against child's parents based on child setting fire to plaintiffs' trucks); *Ware v. King*, 931 N.E.2d 1138, 1145 (Ohio Ct. App. 2010) (analyzing negligent supervision against child's parents based on child accidentally shooting plaintiff while hunting); *Cashman*, 504 N.E.2d at 489–90 (analyzing negligent supervision claim against child's parent where minor ran into plaintiff with a shopping cart). But, here, the child, Austin, is the one who was injured, not a third party. And Defendant Dollar seeks to hold Third-Party Defendant Mason liable for contribution for any liability it incurs for Plaintiffs' negligence claims.

Although the facts before the Court are not typical of a negligent supervision claim, at least one Ohio court has permitted a defendant to proceed with a claim for contribution based on negligent supervision on facts similar to those here. *See Meier v. Morrison*, 655 N.E.2d 449 (Ohio Com. Pl. 1995). There, Richard Meier and his two-and-a-half-year-old son, John Paul Meier, sued the defendant after her dog bit John Paul. *Id.* at 449. The defendant "filed a counterclaim for contribution against" Mr. Meier, alleging that he "negligently supervised and cared for his son." *Id.* Mr. Meier moved for summary judgment on the defendant's counterclaim, "arguing that he [could not] be liable in tort to his son under a claim of negligent supervision." *Id.* (internal quotation marks omitted).

Denying Mr. Meier's motion for summary judgment, the Court rejected his argument "that the concept of 'negligent supervision' by a parent applies only to the actions of the child against a third person." *Id.* at 451. It therefore permitted the defendant's counterclaim for contribution to go forward, reasoning that "[t]he evidence may be that John Paul was injured despite his father's

10

best efforts to supervise him. However, the evidence also may be that his father should have protected John Paul from recognizable dangers." *Id.* The Court concluded that "the jury must determine if plaintiff Richard Meier's supervision of his son was negligent." *Id.*

So too here. Third-Party Defendant Mason does not dispute that she had a duty to exercise reasonable care to control Austin. Instead, she argues that there is no evidence that (1) Austin had a propensity to engage in reckless behavior like that which led to his injury here and (2) that she had knowledge of Austin's propensity to engage in such behavior. (Doc. 59 at 4–6). Ohio law requires that a plaintiff prove "specific instances of prior conduct" that "were sufficient to put a reasonable person on notice that the act complained of was likely to occur." *Ross*, 97 N.E.3d at 726 (citation and quotations omitted). As a result, "[p]arents cannot be held liable for negligent supervision of their children when the parents do not know of the children's propensity to engage in the sort of conduct that caused the … injury." *Id.* (citation and quotations omitted).

Here, Defendant Dollar Tree has submitted evidence demonstrating that: immediately prior to his injury, Austin was running around the store, "tripping over the end cap and falling into the aisle" in the presence of Third-Party Defendant Mason, (Doc. 65-1, 78:24–81:5; *id.*, 86:11–19); the Hilliard Dollar Tree assistant manager warned Austin and Third-Party Defendant Mason that he was going to injure himself, (*id.*, 82:25–84–22); after that warning, Austin continued to run up the same aisle, "attempting to go down the next aisle and tripping over the end cap and falling into that aisle," (*id.*, 86:11–19). This is sufficient to create a genuine issue of material fact as to whether (1) Austin had a propensity to engage in reckless behavior like that which led to his injury here and (2) that Third-Party Defendant had knowledge of Austin's propensity to engage in such behavior. *See, e.g.*, *Gay v. O.F. Mossberg & Sons, Inc.*, No. 2008–P–0006, 2009 WL 1743939, at *9 (Ohio Ct. App. June 19, 2009) (finding genuine issue of material fact regarding parent's

knowledge of child's reckless tendencies where parent witnessed child violate gun safety rules and child subsequently shot friend); *D'Amico v. Burns*, 469 N.E.2d 1016, 1018–19 (Ohio App. 1984) (finding genuine issue of material fact regarding parents' knowledge of child's reckless tendencies where the parents of a child were warned that their child entered onto plaintiff's property and threw objects into a sewer drain, and the child subsequently committed the same acts, damaging plaintiff's property). Third-Party Defendant Mason did not file a reply and has cited no authority to the contrary. Her Motion for Summary Judgment will, therefore, be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Dollar Tree Stores, Inc.'s Motion for Summary Judgment (Doc. 61) and Third-Party Defendant Cynthia Mason's Motion for Summary Judgment (Doc. 59) are **DENIED**.

On or before November 27, 2019, the parties are **ORDERED** to notify the Court if they intend to mediate this case. The Court also **SETS** the following trial-related deadlines:

The parties shall file witness and exhibits lists with the Court on or before January 3, 2020.

The parties shall file any pre-trial motions on or before January 10, 2020.

The final pre-trial conference in this matter is **SET** for January 16, 2020. Counsel shall appear in person at 10:00 A.M. at the Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215 in Room 228.

Trial in this matter is **SET** to begin on January 21, 2020 at 9:00 AM at the Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215 in Room 228.

IT IS SO ORDERED.

Date: November 20, 2019         /s/ Kimberly A. Jolson
                                KIMBERLY A. JOLSON
                                UNITED STATES MAGISTRATE JUDGE